UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| COREY O. RILEY, | ) | C/A No.: 4:12-1894-RMG-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Report and Recommendation |
| DARLENE DREW, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

The *pro se* Petitioner filed a petition for writ of habeas corpus on July 6, 2012, pursuant to 28 U.S.C. § 2241[1]. Respondent filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on October 30, 2012. The undersigned issued an order filed October 30, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the Motion to Dismiss procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response on December 14, 2012. (Doc. #27). An order was issued on April 12, 2013, advising the parties that the motion to dismiss was being converted to a motion for summary judgment due to the parties submitting documents outside of the pleadings and giving the parties time to make any additional submissions in accordance with Rule 56 of the Federal Rules of Civil Procedure.

**STANDARD FOR SUMMARY JUDGMENT**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972);

---

[1] This habeas corpus case was automatically referred to the undersigned United States magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would

2

apply at a trial on the merits." <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. <u>See</u> <u>Celotex</u>, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." <u>Id.</u> at 322; <u>see</u> <u>also</u> <u>Cray Communications, Inc. v. Novatel Computer Systems, Inc.</u>, 33 F.3d 390 (4th Cir. 1994); <u>Orsi v. Kickwood</u>, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## FACTS/ARGUMENTS

Petitioner is currently incarcerated at the Federal Correctional Institution "FCI" Bennettsville, South Carolina. At the time of the allegations in the complaint, Petitioner was incarcerated at the Federal Correctional Institution Cumberland in Cumberland, Maryland. Petitioner has a current projected release date of November 16, 2013, via Good Conduct Time (GCT) Release.

Petitioner seeks "a full expugement [sic] of the charge for which I was sanctioned. I would like a restoration of all my privileges that were taken including the loss of thirty-four days good conduct time." (Petition, p. 13).

 Specifically, based on the petition, Petitioner argues as follows:

1).    On or about May 23, 2010, Petitioner was housed at FPC Cumberland, Maryland.

2).    On that date, at approximately 5:25 A.M., it was discovered by FPC officers that Petitioner failed to report for the institutional count which was conducted at about 5:00 A.M.

3

3).   FPC Cumberland staff members began to search for Petitioner and F.P.C. Food Service Supervisor said that at that time he observed an unknown individual. Later to be determined to be Petitioner, between FPC and Staff Training Center.

4).   The area in which Petitioner was observed is on the prison grounds but deemed to be out of bounds for an inmate who is not assigned to work in that area.

5).   Petitioner had gone to the area to retrieve a bag that he was paid to pick up and did miss the count.

6).   Upon realizing that he had missed the count and seeing that FPC Staff were searching for him, petitioner hid in the FPC Gym in the bleachers section, until the 10 A.M. count approached.

7).   At about 9:30 A.M., Petitioner exited the gym and was seen by the FPC Chaplain, who beckoned for Petitioner to stop.

8).   The Chaplain briefly spoke with Petitioner; inquiring where Petitioner had been, whereupon he accompanied petitioner to the message center.

9).   Petitioner was met shortly thereafter by his Manager, Mark Joseph, who was irate and threatened to have Petitioner prosecuted for escape and sent to a penitentiary.

10).   Petitioner was handcuffed and taken to the FCI Special Housing Unit (SHU).

11).   Three days later, Petitioner received an Incident report which stated that Petitioner was observed "wearing green and brown institutional clothing coming over the hill between the FCI and Staff Training Center."

12).   On or about August 4, 2010, the Incident Report was rewritten . . . which stated, among other things, that Petitioner was off institutional grounds at a Burger King; placing Petitioner in escape status.

13).   Petitioner did not leave the institutional grounds at any time.

(Petition).

Further, Petitioner alleged that the D.H.O. found him guilty of the charged conduct and

sanctioned him with 34 days loss of GCT; 30 months loss of visitation; and, 3 months loss of

commissary. Petitioner asserts that he was recommended for transfer and was transferred to FCI Fort Dix on October 2010. Petitioner asserts that he was "improperly adjudicated and sanctioned for having escaped a federal institution." (Petition, p. 11).  Petitioner requests that he receive a "full expugement[sic] of the charge" and restoration of his privileges including loss of his good conduct time of thirty-four days.

Respondent concedes that Petitioner has exhausted his administrative remedies with respect to the issue raised in his petition. However, Respondent asserts Petitioner received all process due in the disciplinary hearing. Respondent submitted copies of the incident report of June 1, 2010, and the incident report of August 5, 2010, a copy of the Hearing Officer Report dated February 15, 2011, and the declaration of J. Howard Losiewicz, the DHO for the Federal Bureau of Prisons at FCI Cumberland, Maryland.  Based on the incident reports and Hearing Officer Reports, Respondent asserts on May 23, 2010, Petitioner received Incident Report No. 2019185 charging him with the prohibited act of Escape from an Open Institution in violation of Code 200 and a hearing was conducted by the Unit Discipline Committee (UDC) on June 1, 2010, at which Petitioner made a statement. (Exhibit 2 and Exhibit 2, Attachment A). Due to the serious nature of the charges, Respondent asserts that the UDC referred the entire matter to the Discipline Hearing Officer (DHO) and no further disciplinary action was taken on this incident report, no hearing was held, and Petitioner was not sanctioned. (Id.). On August 4, 2010, Petitioner received Incident Report No. 2049110 charging him with the prohibited act of Escape from an Open Institution, in violation of Code 200 and provided Petitioner with a description of the incident and the prohibited act he was being charged with. (Id.). The description of the incident indicates a Special Investigative Service (SIS) investigation, completed and approved on July 30, 2010, concluding that Petitioner escaped

5

from the Federal Prison Camp on May 23, 2010. (Id.). On August 5, 2010, a second UDC hearing

was conducted on this incident report. (Id.). The UDC referred the entire matter to the DHO "[b]ased

upon the evidence and severity of the charge . . . due to sanctions unavailable at the UDC level."

(Id.).  Petitioner's DHO hearing was held on August 11, 2010. (Id.).  At this hearing, it was noted

that Plaintiff acknowledged receiving a copy of the incident report and stated he understood his

rights before the DHO. (Id.). Petitioner's requested staff representative could not attend the hearing,

but Petitioner elected to proceed without a representative. (Id.). Petitioner raised the issue of delay

between July 30, 2010, when the SIS investigation was approved and August 4, 2010, when the

Incident Report was completed. (Id.). Program Statement 5270.09, inmate Discipline Program,

provides that the incident reports will ordinarily be written within 24-hours of the time staff

conclude the inmate committed a prohibited act. (Id.). The time frame is not an absolute

requirement. (Id.). The DHO noted no evidence of harm to Petitioner caused by the delay in the time

between the approval of the investigation and the time the reporting officer prepared the incident

report. (Id.). Petitioner made a statement at the hearing in which he admitted being below the

training center and admitted he saw the officer drive up in his car. (Id.). Petitioner indicated he was

paid by another inmate to pick up something in that area, but he did not know what he was picking

up. He stated he returned to camp and when he saw it was locked down he "hid out" by the

kennel/outdoor worship area. (Id.). Petitioner stated that he went into the gym about 7:00 a.m. and

met two other inmates. (Id.). Petitioner asked the other two inmates to pack up his stuff around 7:30-

7:45 a.m. and claimed he sat in the gym and talked with the other two inmates until the recall was

announced. (Id.). Petitioner presented two witnesses who offered their testimony telephonically.

(Id.). The DHO gave greater weight to the staff members and the SIS investigation as well as the fact

6

the witnesses requested by Petitioner presented no confirmation or validation of Petitioners claims. The DHO found Petitioner left the Federal Bureau of Prison's property for a time on May 23, 2010, committing the prohibited act of Escape from an Open Institution as charged. (Id.). Further, Respondent argues that Petitioner's allegations that the sanctions he received were disproportionate to the penalties other inmates received for the same violation lacks merit and should fail.

## ANALYSIS

The Supreme Court held that inmates are entitled to limited due process rights in prison disciplinary proceedings to the extent that a protected liberty interest is affected. Inmates have a protected liberty interest in the accumulation of good time credits. See Wolff v. McDonnell, 418 U.S. 539, 564, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Therefore, in prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. Id. These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. Wolff, 418 U.S. at 564-571. Furthermore, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, the Petitioner, who was sanctioned, including the loss of GCT, was given advance written notice of the charges more than twenty-four hours before the DHO hearing. Petitioner was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative. Petitioner elected to proceed without a representative when the staff representative was unable to be at the hearing. (Respondent's Exhibit 2, Attachment D).

7

Petitioner also presented two witnesses telephonically.  There was a written decision listing the specific evidence relied upon, the findings, and the sanctions. (Id.). The report was delivered to Petitioner.  Accordingly, Petitioner received all the due process required by Wolf in his disciplinary proceeding. Petitioner does not dispute this fact.[2]

Although BOP policy states that a staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing, it also states that "[y]ou will *ordinarily* receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." See 28 C.F.R. § 541.5. Therefore, the plain language of the provision indicates that the time limits are not mandatory and has been so found by the courts. See Carr v. Lamanna, 2007 WL 2428537 (D.S.C. 2007) *citing* Saenz-Lopez v. Bureau of Prisons, 221 F.3d 1339 (7th Cir. 2000)(BOP has discretion to depart from time frames in 28 C.F.R. for good cause); Sanders v. Edgefield, 2006 WL 4279486 (D.S.C. 2008).

In this case, Petitioner has neither asserted nor shown that he was prejudiced by any delay, and he has not shown a violation of due process under Wolff, supra. Accordingly, Petitioner's claims fail. Violations of BOP regulations do not equate to a violation of due process. See Irvin v. Federal Bureau of Prisons, supra, (citing Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D.Pa.1992) ("The Constitution does not require strict adherence to administrative regulations and guidelines.")) The Constitution only requires compliance with minimal federal due process standards. Id. The Supreme

---

[2]Furthermore, in an institutional setting, the fact-finder need only show that some evidence existed to support the decision.  See Irvin v. Federal Bureau of Prisons, 2009 WL 1811245 (D.S.C.2009) (citing Superintendent, Massachusetts Correction Institution v. Hill, 472 U.S. 445-456-457, 105 S.Ct. 2768, 86 L.Ed. 2d 356 (1985)). In the instant action, Petitioner admitted that he was out of bounds and hid out.

Court in <u>Wolff</u> did not set any specific time limit for the reporting of the hearing. <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. at 563-576 (noting that due process requirements are satisfied where a prisoner is given advance written notice of the charges, the right to participate in the hearing and call witnesses, and provided with a written statement setting out the decision and the reasons therefore). In conclusion, there is no evidence of a due process violation in this action as Petitioner received all of the due process safeguards delineated in <u>Wolff.</u> Accordingly, it is recommended that the petition be denied.

Respondent further asserts that Petitioner's allegations that the sanctions he received were disproportionate to penalties other inmates received for the same violation are without merit. Respondent asserts that sanctions on an inmate are appropriate provided they are within those authorized by the discipline policy. Respondent cited to the table accompanying 28 C.F.R. §541.13 asserting that given the severity of the charge, each sanction imposed is authorized for a 200 level offense, and that Petitioner was charged with Escape from an Open Institution which is a 200 level offense.

Thus, Petitioner's claim fails because he was sanctioned according to policy based on the severity of his charge, and he has failed to show that he was sanctioned inappropriately. Furthermore, Petitioner fails to show that he received penalties disproportionate to any other inmates.

## <u>CONCLUSION</u>

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (document #19) be GRANTED and Petitioner's petition for Writ of Habeas Corpus be denied, and

this petition dismissed. It is further recommended that any outstanding motions be deemed moot.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

April 24, 2013
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**